UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  04/08/2024
```

-------------------------------------------------------------------X
                                           :

CREATIVE PHOTOGRAPHERS, INC.,          :
                                           :

                 Plaintiff,       :

                                           :             23-cv-7106 (LJL)

       -v-                         :

                                         :       OPINION AND ORDER

GRUPO TELEVISA, S.A.B.,              :

                                         :

                 Defendant.     :

                                         :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant Grupo Televisa, S.A.B. ("Grupo Televisa" or "Defendant") moves to dismiss the First Amended Complaint ("FAC") of Plaintiff Creative Photographers, Inc. ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Dkt. No. 21.

For the following reasons, the motion to dismiss the FAC for lack of personal jurisdiction is granted, and the FAC is dismissed without prejudice.

## BACKGROUND

The Court first describes the allegations of the FAC before turning to the evidence before the Court on Defendant's motion to dismiss the FAC for lack of personal jurisdiction.

On Defendant's motion to dismiss the FAC for failure to state a claim for relief, the Court is limited to reviewing the well-pleaded allegations of the FAC as supplemented by any documents incorporated by reference.  *See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021).  On Defendant's motion to dismiss the FAC for lack of personal jurisdiction, the Court is not limited to the well-pleaded allegations of the FAC but may also consider any affidavits, declarations, or exhibits submitted

by the parties.  *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), *aff'd*,
882 F.3d 333 (2d Cir. 2018).

## I.      Allegations of the FAC

Plaintiff is a New York corporation with its principal place of business in New York,
New York.  Dkt. No. 12 ¶ 2.  Plaintiff purports to be a "boutique style" agency which licenses
the work of photographers in both traditional and new media platforms for a variety of uses.  *Id.*
¶¶ 19–20.  It counts the following photographers among those whose licenses it holds: Frank W.
Ockenfels III, Nino Munoz, Ruven Afanador, Matthias Vriens McGrath, and Vijat Mohindra.
*Id.* ¶ 19.  Plaintiff claims to hold the exclusive licenses of the copyrights to twenty-one
photographic images (the "Copyrighted Works") that are attached as Exhibit A to its complaint.
*Id.* ¶ 20.  It licenses the Copyrighted Works for professional applications, including editorial,
advertising, corporate and non-profit use.  *Id.* ¶ 23.

Defendant is a Mexican multimedia company, located in Mexico.  *Id.* ¶ 3.  Defendant is a
large distributor of Spanish-language content through various media channels, including through
websites that are published by its subsidiary, Editorial Televisa SA De CV ("Editorial
Televisa").  *Id.* ¶ 4.

Plaintiff alleges that within the three years prior to the filing of its complaint it
discovered, *id.* ¶ 25, that the Copyrighted Works were "being reproduced, distributed, used in the
creation of derivative works, and publicly displayed, without Plaintiff's authorization at a
number of websites owned or controlled by Defendant," *id.* ¶ 26.  Specifically, Plaintiff avers
that "Defendant located the Copyrighted Works on the internet and, without authorization from
Plaintiff, downloaded the Copyrighted Works to computer systems owned or operated by
Defendant, and then used the Copyrighted Works in the creation of webpages to attract users to
visit and remain at Defendant's website for commercial purposes of generating revenue . . . ."

*Id.* ¶ 30.  It further alleges that "Defendant stored the Copyrighted Works on computer servers and computer systems and machines owned by Defendant," and that each time a computer user in New York "and elsewhere" viewed a Copyrighted Work, "Defendant had to reproduce digital copies through the internet to the computer monitors and display screens where the Copyrighted Works were then publicly displayed without Plaintiff's authorization."  *Id.* ¶ 31.

Plaintiff attaches to the FAC a list of 105 uniform resource locators ("URLs"), all allegedly owned and operated by Defendant, on which Plaintiff alleges that Defendant used the Copyrighted Works.  *See* Dkt. No. 12-3.  According to Plaintiff, "Defendants' Websites are hosted from servers owned or controlled by Defendant and located in the United States, from which its content is reproduced, distributed, and publicly displayed in the State of New York." Dkt. No. 12 ¶ 4.  Plaintiff alleges, upon information and belief, that Defendant has transacted "significant business" with the New York-based company Univision and its affiliates to "reproduce, distribute, and publicly display Defendant's Spanish language content, including the content at issue in this litigation, to a substantial number of consumers . . . in New York."  *Id.* ¶ 6.  Plaintiff further alleges, also upon information and belief, that Defendant transacts business with the New York-based company TelevisaUnivision, or its agents and affiliates, "in order to reproduce, distribute, and publicly display Defendant's Spanish language content, including the content at issue in this litigation, to a substantial number of consumers . . . in New York."  *Id.* ¶ 7.

Based upon the conduct alleged in the FAC, Plaintiff brings a claim for direct copyright infringement pursuant to 17 U.S.C. § 101 *et seq.*  *Id.* ¶¶ 36–44.

## II.     Evidence Submitted in Connection with Defendant's Motion to Dismiss for Lack of Jurisdiction

On November 22, 2023, along with its motion to dismiss, Dkt. No. 21, Defendant

submitted a declaration from Liliana Martinez Vela, the Legal Director of Corporate and Finance

at Grupo Televisa, Dkt. No. 23, and a declaration from Michelle Cascante, a paralegal employed

by Defendant's law firm, Dkt. No. 24.  On December 12, 2023, Defendant submitted a further

declaration from Vela.  Dkt. No. 31.

Vela declares that Grupo Televisa is a Mexican entity organized and existing under the

laws of Mexico, with its principal place of business in Mexico, and that it does not have an office

in New York, is not registered with the New York Department of State, does not own property in

New York, and does not have an address, phone number, or mailing address in New York.  Dkt.

No. 23 ¶¶ 6, 8.  According to Vela, Grupo Televisa does not direct any advertising specifically

toward New York or United States residents, or advertise in any publication that is directed

primarily toward New York or United States residents.  *Id.* ¶ 9.  Vela further asserts that Grupo

Televisa does not control TelevisaUnivision, which is a wholly separate legal entity from Grupo

Televisa and not a subsidiary of Grupo Televisa, and that it does not control the New York-based

company known as Univision.  *Id.* ¶¶ 10–11.  Next, Vela declares that all of the 108 URLs listed

by Plaintiff as displaying Copyrighted Works either do not display the Copyrighted Works or are

not owned, operated or managed by Grupo Televisa.  *See id.* ¶¶ 13–25.  According to Vela,

certain either do not contain links to websites that are live or display an error message or require

a sign-in, and therefore do not display the Copyrighted Works, *id.* ¶ 14, while others do not

display an image identified by Plaintiff as containing a Copyrighted Work, *id.* ¶ 15.  Vela also

identifies another group of links that are not owned, operated, or managed by Grupo Televisa or

its agents, *id.* ¶¶ 16, 21, 22, 25.  Vela does identify twenty-five links for websites that are

operated by a company that Grupo Televisa has invested in, but Grupo Televisa does not directly operate or manage the website domain that hosts the links and is not responsible for the selection and use of the content displayed on websites with that domain. *Id.* ¶ 17. Vela also identifies forty-nine links to websites affiliated with print magazines that are distributed in Spanish to residents of Mexico and Latin America by Grupo Televisa's subsidiary Editorial Televisa; however, Grupo Televisa is not responsible for the selection and use of the content displayed on those websites and the services for them are not located in New York. *Id.* ¶¶ 18, 19, 20, 23, 24.

Cascante, meanwhile, testifies to her receipt of error messages, which indicated, "[t]his video is not available in your country," when she attempted to watch multiple videos on several of the websites listed by Plaintiff. Dkt. No. 24 ¶¶ 4–5. In her reply declaration, Vela states that Grupo Televisa has not contracted or otherwise transacted business with TelevisaUnivision or Univision concerning the allegedly infringing content at issue in this case. Dkt. No. 31 ¶ 5.

Plaintiff's counsel replies to Defendant's declarations with a declaration containing screenshots of various URLs, which Plaintiff believes to be owned or controlled by Defendant and which were submitted to counsel for Defendant on October 31, 2023. Dkt. No. 29 ¶ 3.

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed on August 11, 2023. Dkt. No. 1. On November 2, 2023, Plaintiff filed the FAC. Dkt. No. 12.

On November 22, 2023, Defendant filed this motion to dismiss the FAC, Dkt. No. 21, along with a memorandum of law in support of the motion, Dkt. No. 22, and the Vela and Cascante declarations, Dkt. Nos. 23–24. Plaintiff filed a memorandum of law in opposition to the motion, Dkt. No. 28, and the declaration of its counsel, R. Terry Parker, Dkt. No. 29, on December 5, 2023. On December 12, 2023, Defendant filed a reply memorandum of law in

further support of the motion, Dkt. No. 30, along with an additional declaration of Vela, Dkt. No. 31.

## LEGAL STANDARD

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Where, as here, jurisdictional discovery has not been conducted, the plaintiff need only make a *prima facie* showing by his pleadings and affidavits that jurisdiction is proper. *Id.* at 85; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir.1993) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir.1990) (per curiam) (citation omitted)). The court must "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in [its] favor." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 131 (2d Cir. 2022) (quoting *DiStefano*, 286 F.3d at 84).

Even so, the *prima facie* showing required to establish personal jurisdiction prior to an evidentiary hearing still "must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Dorchester Fin. Sec.*, 722 F.3d at 85. While the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs," *id.*, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotations omitted). "[C]onclusory allegations are not enough to establish personal jurisdiction." *Gmurzynska v. Hutton,* 257 F. Supp. 2d 621, 625 (S.D.N.Y.2003) (quoting *Marczeski v. Kamba*, 2001 WL 237204, at *1 (D. Conn. Feb. 23, 2021)), *aff'd,* 355 F.3d 206 (2d Cir.2004); *accord Megna v. Biocomp Laboratories Inc.*, 166 F. Supp. 3d 493, 496–97 (S.D.N.Y. 2016); *Allojet PLC v. Vantage Assocs.*, 2005 WL 612848, at *3 (S.D.N.Y. Mar. 15, 2005) (Where a defendant "rebuts a plaintiff's unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and the plaintiff does not counter that evidence—the allegation may be deemed refuted" (citation, alterations and internal quotation marks omitted)).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Defendant moves to dismiss the FAC on several grounds: (1) Plaintiff has failed to establish that the Court may exercise personal jurisdiction over Defendant; (2) the FAC fails to plead the elements of a claim for copyright infringement; (3) Plaintiff's claim is time-barred by the applicable statute of limitations; and (4) Plaintiff has failed to plead statutory standing for his claim. *See* Dkt. No. 22. The Court starts with personal jurisdiction. *See Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 14 (S.D.N.Y. 2022) ("A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question and must dismiss the action against any defendant over whom it lacks personal jurisdiction."); *see also N. Fork Partners Inv. Holdings, LLC v. Bracken*, 2020 WL 6899486, at *4 (S.D.N.Y. 2020) (same). Defendant argues, in essence, that it cannot be forced to defend itself in New York based on the allegations that it posted to the internet from outside of New York, copyrighted materials to which a New York-based resident enjoyed an exclusive license, and that Plaintiff has not alleged any other facts that are sufficient to subject Defendant to personal jurisdiction in New York. Because the Court finds that it does not have personal jurisdiction over Defendant, it does not reach Defendant's other grounds for dismissal.

"In litigation arising under federal statutes that do not contain their own jurisdictional provisions, such as the Copyright Act under which suit is brought in the case at bar, federal

courts are to apply the personal jurisdiction rules of the forum state, provided that those rules are consistent with the requirements of Due Process." *Penguin Grp. (USA) Inc. v. Am. Buddha ("Penguin I")*, 609 F.3d 30, 35 (2d Cir. 2010); *see Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193,196 (2d Cir. 2000); *Moonbug Ent. Ltd. v. Autumn Sell*, 2023 WL 2051247, at *6 (S.D.N.Y. Feb. 16, 2023).  "In New York, there are two ways to establish personal jurisdiction over a defendant: (1) 'general jurisdiction' under N.Y. C.P.L.R. § 301; and (2) 'specific jurisdiction' under N.Y. C.P.L.R. § 302." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015).  At this stage of the proceedings, a plaintiff need only make a "prima facie showing that jurisdiction exists." *Penguin I*, 609 F.3d at 34–35 (2d Cir. 2010) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir.2006)).  In other words, a complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are "legally sufficient allegations of jurisdiction." *Id.* at 35 (internal quotation marks omitted). Plaintiff asserts that the Court may exercise general personal jurisdiction over Defendant, and that the Court may exercise specific personal jurisdiction over Defendant pursuant to New York's long-arm statute.  The Court addresses each argument in turn.

## I.      General Jurisdiction

A defendant is subject to general personal jurisdiction if he is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." *Laufer v. Ostrow*, 434 N.E.2d 692, 694 (N.Y. 1982) (quoting *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)).  "The 'doing business' standard is a stringent one because a corporation which is amenable to the Court's general jurisdiction 'may be sued in New York on causes of action wholly unrelated to acts done in New York.'" *Jacobs v. Felix Bloch Erben Verlag für Bühne Film und Funk KG*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001) (quoting *Ball*, 902 F.2d at 198).

Plaintiff fails to respond to Defendant's argument that it has not pleaded general jurisdiction and thus the claim is deemed abandoned.  *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2016).  In any event, Plaintiff has not made a *prima facie* showing that the Court may exercise general jurisdiction over Defendant under New York law.  In the FAC, Plaintiff alleges that personal jurisdiction over Grupo Televisa is proper because it "conducts continuous, permanent, and substantial business in New York both directly and through its affiliates, agents, and subsidiaries who have offices, bank accounts, and real estate in New York."  Dkt. No. 12 ¶ 11.  As to Grupo Televisa itself, that conclusory allegation is plainly untrue.  Plaintiff admits that Defendant is a Mexican company located in Mexico.  *Id.* ¶ 3; *see also* Dkt. No. 23 ¶ 5.  It does not refute that Defendant does not have an office in New York, is not registered with the New York Secretary of State, does not own property in New York, and does not have an address, phone number, or mailing address in New York.  Dkt. No. 23 ¶ 8.  The allegations that "Defendant's Websites are hosted from servers owner or controlled by Defendant and located in the United States," Dkt. No. 12 ¶ 4, are insufficient to establish general personal jurisdiction over Defendant in New York even if the websites are accessible to viewers in New York, *see Wahlhuetter v. CollegeHumor.com, LLC*, 2021 WL 6205506, at *4 (S.D.N.Y. Nov. 29, 2021); *Philpot v. Kos Media LLC*, 2017 WL 2270248, at *7 (S.D.N.Y. Apr. 21, 2017), *report and recommendation adopted*, 2017 WL 2269531 (S.D.N.Y. May 23, 2017) (citing cases).  Moreover, although Plaintiff alleges that Defendant transacts business in New York through and with Univision and TelevisaUnivision, it does not dispute that the two are independent entities over whom Defendant does not exercise control and that any contractual relationship Defendant has with those companies is insufficient to ground general personal jurisdiction in New York.  *See Avila v. Lease Fin. Grp., LLC*, 2012 WL 3165408, at *4 (S.D.N.Y. July 31, 2012).

## II.     Specific Jurisdiction

New York's long-arm statute, C.P.L.R. Section 302(a), provides for specific personal

jurisdiction.  It states:

> (a)      Acts which are the basis of jurisdiction.  As to a cause of action arising from
> any of the acts enumerated in this section, a court may exercise personal jurisdiction
> over any non-domiciliary, or his executor or administrator, who in person or
> through an agent:
>
> > 1. transacts any business within the state or contracts anywhere to supply
> > goods or services in the state; or
> >
> > 2. commits a tortious act within the state, except as to a cause of action for
> > defamation of character arising from the act; or
> >
> > 3. commits a tortious act without the state causing injury to person or
> > property within the state, except as to a cause of action for defamation of
> > character arising from the act, if he
> >
> > > (i) regularly does or solicits business, or engages in any other
> > > persistent course of conduct, or derives substantial revenue from
> > > goods used or consumed or services rendered, in the state, or
> > >
> > > (ii) expects or should reasonably expect the act to have
> > > consequences in the state and derives substantial revenue from
> > > interstate or international commerce; . . .

N.Y. C.P.L.R. § 302(a).  In determining specific jurisdiction over a non-domiciliary, New York

courts engage in a two-step analysis.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158,

163 (2d Cir. 2010) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007)).

The first step is the application of New York's long-arm statute.  *Id.*  If the exercise of personal

jurisdiction is deemed appropriate pursuant to the long-arm statute, the second step is to

determine "whether personal jurisdiction comports with the Due Process Clause of the United

States Constitution."  *Id.* at 164; *see also Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d

Cir. 2023); *Moonbug Ent.*, 2023 WL 2051247, at *6.

The FAC does not specifically allege a particular subsection of Section 302(a) of the C.P.L.R. under which the Court may exercise specific jurisdiction over Defendant. In its memorandum of law in opposition to Defendant's motion to dismiss, however, Plaintiff argues that personal jurisdiction is proper under all three subsections, Dkt. No. 28 at 14–18, and the Court so construes the FAC for purposes of this motion, *see* Dkt. No. 12 ¶¶ 5–7 (alleging that Defendant transacts business with companies based in New York); *id.* ¶¶ 10, 12–14 (alleging that Defendant is committing torts "in" New York State); *id.* ¶ 15 (alleging that jurisdiction is proper because Plaintiff's injuries arise out of and are directly related to Defendant's "sustained and substantial business contacts in New York"); *id.* ¶ 16 (alleging that jurisdiction is proper because Defendant's tortious acts committed outside New York "are causing harm to Plaintiff's business here in New York"). The Court considers each asserted basis for personal jurisdiction.

### A.      Section 302(a)(1)

C.P.L.R. § 302(a)(1) confers personal jurisdiction over a non-domiciliary that "transacts any business within the state or contracts anywhere to supply goods or services in the state," "[a]s to a cause of action arising" from the transaction of such business. C.P.L.R. § 302(a)(1). "Although Section 302(a)(1) is typically invoked in breach of contract cases, 'it applies as well to actions in tort when supported by a sufficient showing of facts.'" *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (quoting *Singer v. Walker*, 209 N.E.2d 68, 81 (N.Y. 1965)). To establish jurisdiction under N.Y. C.P.L.R. § 302(a)(1), "two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy, PC L. Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013)).

The first element—that the defendant must have transacted business within the state—is satisfied if the defendant "purposefully avails itself of the privilege of conducting activities

within [New York]," and thereby invokes the benefits and privileges of New York law such that it should reasonably expect to defend its actions here.  *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)); *see Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 61 (2d Cir. 2012).  Section 302(a)(1) is a "single act statute," meaning that, "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful . . . ."  *Deutsche Bank Sec., Inc. v Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988)); *see Eades*, 799 F.3d at 168; *Bank Brussels Lambert*, 171 F.3d at 787 (holding that although the defendant "need not be physically present" in the state for the court to have personal jurisdiction, "'there must be some transaction attributable to the one sought to be held *which occurs in New York*'" (quoting *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 258 N.E.2d 202, 205 (1970)) (emphasis in original)).  Purposeful availment "requires more than 'random, fortuitous, or attenuated contacts.'"  *Wahlhuetter*, 2021 WL 6205506, at *5 (quoting *Cap. Recs., LLC v. VideoEff, Inc.*, 611 F. Supp. 2d 349, 357–58 (S.D.N.Y. 2009)).  It is the "quality" of the defendant's contacts with New York that is "the primary consideration" and not their quantity.  *Licci*, 673 F.3d at 62 (quoting *Deutsche Bank*, 7 N.Y.3d at 71); *Fischbarg v. Doucet*, 880 N.E.2d 22, 27 (N.Y. 2007); *N. Fork Partners*, 2020 WL 6899486, at *6.

"As for the second part of the test,"—that the claim asserted must arise from that business activity—"[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks omitted).  "A connection that is 'merely coincidental' is insufficient to

support jurisdiction." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). "[T]hese standards connote, at a minimum, a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 900 (N.Y. 2012). "In effect, the 'arise-from' prong limits the broader 'transaction-of-business' prong to confer jurisdiction only over those claims in some way arguably connected to the transaction." *Id.* at 900–01.

Plaintiff asserts that the Court may exercise personal jurisdiction over Defendant in this action pursuant to Section 302(a)(1) because "Defendant transacts business with New York companies in order to reproduce, distribute, and publicly display the Spanish language content, including the content at issue in this litigation, to New York residents in New York." Dkt. No. 12 ¶ 5. Plaintiff also alleges that "Defendant has transacted significant business with the New York based company known as Univision and its affiliates," and that "Defendant has more recently transacted business, and continues to transact business, with the New York based company known as TelevisaUnivision, or its agents and affiliates . . . ." *Id.* ¶¶ 6–7.

Defendant argues that Plaintiff fails both parts of the Section 302(a)(1) test. Dkt. No. 22 at 8. With respect to the first part of the test, Defendant asserts not only that TelevisaUnivision is a distinct legal entity from Defendant and that Defendant does not control Univision, but also that Plaintiff fails to "plead the existence of any contracts between [Defendant] and either Univision or TelevisaUnivision, much less the details of such contracts to warrant the exercise of specific jurisdiction over Defendant." *Id.* at 9–10. Defendant also asserts that the operation of websites that are available to residents of New York does not constitute the transacting of business in New York, and that only two of the allegedly infringing websites are owned by

Grupo Televisa itself.  *Id.* at 10.  With respect to the second part of the test, Defendant argues

that Plaintiff's claim does not arise from any transaction of business in New York by Defendant

because Plaintiff fails to allege that the infringing acts of copying and uploading of the images

took place in New York or arose out of any activities by Grupo Televisa in New York.  *Id.* at 11–

12.

       The FAC's allegations that Defendant distributes the Copyrighted Works "through

websites which are published by Defendant's subsidiary" and to which New York consumers

have access, Dkt. No. 12 ¶ 4, are not sufficient to make a *prima facie* showing that this Court

may exercise personal jurisdiction under C.P.L.R. 302(a)(1).  The law is now settled that "the

mere availability of the site to users in New York, standing alone, does not amount to transacting

business in the state for purposes of section 302(a)."  *Megna*, 166 F. Supp. 3d at 496–500; *see

also Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 WL 1500896, at *7 (S.D.N.Y. June 23, 2005)

(Lynch, J.) ("It stretches the meaning of 'transacting business' too far to subject defendants to

personal jurisdiction in any state merely for operating a website . . . without some evidence or

allegation that commercial activity in that state actually occurred or was actively sought.");

*Philpot*, 2017 WL 2270248, at *10 (holding that allegations that "defendant unlawfully

published [copyrighted works] on a globally-accessible website which is viewable by New

Yorkers (among others), enables New Yorkers (among others) to purchase unrelated items such

as clothing, and had a New York IP address" were "not enough" to establish personal jurisdiction

under 302(a)(1)); *Pearson Educ., Inc. v. Yi Shi*, 525 F. Supp. 2d 551, 556 (S.D.N.Y. 2007)

("Simply maintaining a web site in a distant state that residents of New York visit does not, by

itself, subject a defendant to jurisdiction in New York.").  "Instead, courts consider where the

particular website lies on the '"spectrum" of interactivity.'"  *Philpot*, 2017 WL 2270248, at *10

(quoting *Royally Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009)).

"'Passive' websites, which merely make information available to viewers, have 'been analogized

to an advertisement in a nationally-available magazine or newspapers, and [do] not without more

justify the exercise of jurisdiction over the defendant.'" *Id.* (quoting *Citigroup Inc. v. City

Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000)).  "Fully 'interactive' websites, which are

used to purposefully sell goods or services in New York, or charge membership fees to registered

users in New York, can be sufficient to trigger jurisdiction under § 302(a)(1) where the cause of

action arises out of such purposeful activity." *Id.* (citing *Mattel, Inc. v. Adventure Apparel*, 2001

WL 286728, at *2–3 (S.D.N.Y. Mar. 22, 2001)).

       Plaintiff cannot establish personal jurisdiction under Section 302(a)(1) based on the claim

that the websites contain the Copyrighted Works for two independent reasons.  First, Plaintiff

does not allege that Defendant itself owns or operates the websites containing the Copyrighted

Works that are available to New York consumers.  Plaintiff instead alleges that Defendant's

subsidiary, Editorial Televisa, owns and operates the websites.  But, putting aside the fact that

Defendant has put forth unrebutted evidence that none of the websites owned or operated by

Editorial Televisa contain Copyrighted Works, there is no allegation that Editorial Televisa does

business in the State of New York other than through websites that are available in New York

and, even if Plaintiff had made such allegations, "the mere presence of a subsidiary in New York

does not elevate the parent corporation's contacts with the state to the requisite level." *Chaplin

v. Kido Indus. Co.*, 2011 WL 2421309, at *3 (S.D.N.Y. June 7, 2011); *see also Moreau v. RPM,

Inc.*, 799 N.Y.S.2d 113, 114 (2d Dep't 2005) ("Mere ownership by a parent company of a

subsidiary that is subject to personal jurisdiction is insufficient to establish jurisdiction over the

parent." (citations omitted)); *Meehan v. VIPKid*, 2023 WL 7001363, at \*16 (E.D.N.Y. Aug. 29, 2023) (citing *Moreau*, 799 N.Y.S. 2d at 114).

Second, Plaintiff does not allege that the websites containing Copyrighted Works were sufficiently interactive to warrant a finding that Defendant transacted business in New York. The FAC contains minimal allegations regarding the content of the websites that contain the Copyrighted Works, stating merely that the websites "publicly display[]" Defendant's content for "consumers of the . . . content." *See* Dkt. No. 12 ¶ 4. The FAC contains no allegations that users could interact with the websites, or that Defendant used the website to sell goods or services in New York, or charge membership fees to users in New York. *See Mattel, Inc.*, 2001 WL 286728 at \*2–3; *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 466 (S.D.N.Y. 2008); *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, 2008 WL 1700196, at \*6 (S.D.N.Y. Apr. 4, 2008).

Plaintiff instead relies on the allegations that Defendant has entered into contracts with two New York-based entities, Univision and TelevisaUnivision, pursuant to which Defendant creates content that it distributes to Univision and TelevisaUnivision for those companies to publicly broadcast to audiences in New York. *See* Dkt. No. 12 ¶¶ 5–7. Plaintiff asserts that these agreements are sufficient to support a finding that Defendant purposefully availed itself of the privilege of conducting activities within New York. *See, e.g.*, *Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 9–10 (2d Cir. 2018) (summary order) ("The 'overriding criterion' in determining whether an entity 'transacts any business' in New York within the meaning of the statute is whether the entity 'purposefully avails itself of the privilege of conducting activities within New York.'" (quoting *Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 993 (N.Y. 2014))). Tellingly, however, Plaintiff does not allege that Univision and TelevisaUnivision post the

Copyrighted Works on any websites they own and operate.  Thus, even if the Court were to find

that Plaintiff has sufficiently plead that Defendant purposefully availed itself of the privileges of

doing business in New York by agreeing to provide content to Televisa Univision and Univision

for those companies to broadcast the content in New York, Plaintiff fails to make a *prima facie*

showing that its claims arise out of the business that Defendant transacted in New York.

At most, the FAC includes the conclusory allegation that "Defendant has transacted

significant business with the New York based company known as Univision and its affiliates in

order to reproduce, distribute, and publicly display Defendant's Spanish language content,

*including the content at issue in this litigation*, to a substantial number of consumers in New

York."  Dkt. No. 12 ¶ 6 (emphasis added).  But none of the URLs that Plaintiff identifies as

containing Copyrighted Works are said to be owned by either entity.  *See* Dkt. No. 12-3.  And

Plaintiff does not rebut Defendant's assertion that "[Grupo Televisa] has not contracted or

otherwise transacted business with TelevisaUnivision or Univision concerning the allegedly

infringing content at issue in this case."  Dkt. No. 31 ¶ 5.  Where a Defendant "rebuts a

plaintiff's unsupported allegations with direct, highly specific, testimonial evidence regarding a

fact essential to jurisdiction—and the plaintiff does not counter that evidence—the allegation

may be deemed refuted."  *Allojet PLC*, 2005 WL 612848, at *3.  Plaintiff therefore fails to allege

that its claim arises out of the transactions between Grupo Televisa and TelevisaUnivision and

Univision, and thus does not satisfy the second prong for Section 302(1)(1) personal jurisdiction.

In sum, Plaintiff makes no claim that any of the infringing materials "were copied or

uploaded in New York, that the infringement was directed or committed by any of defendant's

New York personnel, or that the claim arose out of any of the—unspecified—business activities

that defendant conducted in New York."  *Wahlhuetter*, 2021 WL 6205506, at *6; *Philpot*, 2017

WL 2270248, at *9 ("Plaintiff makes no claim that the infringing action (that is, the copying and uploading of the image) took place in New York, involved any of defendant's New York-based personnel, or otherwise arose out of any of its activities in New York.").  Plaintiff has therefore failed to make a prima facie case that personal jurisdiction is proper under Section 302(a)(1).

### B.      Section 302(a)(2)

C.P.L.R. § 302(a)(2) provides for personal jurisdiction over a defendant who "commits a tortious act [other than defamation of character] within the state" if the cause of action arises from that activity.  C.P.L.R. § 302(a)(2).  The Second Circuit has held that Section 302(a)(2) "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act."  *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); *see Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 75 (2d Cir. 2023); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 209 N.E.2d 68, 80 (N.Y. 1965); *Megna*, 166 F. Supp. 3d at 499; *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 2015 WL 1514539, at *7 (S.D.N.Y. Mar. 31, 2015).  "[A] defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)."  *Bank Brussels Lambert*, 171 F.3d at 790.

It is undisputed that Defendant is a Mexican corporation with no presence whatsoever in New York.  *See Megna*, 166 F. Supp. 3d at 499.  Plaintiff contends, however, that under Section 302(a)(2), a defendant may also be subject to personal jurisdiction when its agent commits a tort in New York state from which the cause of action arises.  Dkt. No. 28 at 16–17; *see also Bonhac World Corp. v. Mellin Works LLC*, 2023 WL 346950, at *4 (S.D.N.Y. Jan. 20, 2023) (discussing agency jurisdiction).  Plaintiff does not, however, identify an agent of Defendant that has committed a tort in New York State.  First, Univision and TelevisaUnivision are not Defendant's agents.  Plaintiff has not alleged any control Defendant has over either entity or refuted Defendant's evidence that it did not exercise any control.  *See Edwardo*, 66 F.4th at 74 ("To be

considered an agent under section 302, the alleged agent must have acted 'for the benefit of and

with the knowledge and consent' of the non-resident principal and the non-resident principal

must have "exercised some control over" the alleged agent.") (quoting *Kreutter*, 522 N.E.2d at

44); *see Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 300 (S.D.N.Y. 2020) (holding that

plaintiff fails to satisfy Section 302(a)(2) where he did not allege that agents acted on

defendant's behalf and with defendant's consent in distributing infringing material in New

York).  Additionally, Plaintiff does not identify conduct of Editorial Televisa, which Defendant

concedes is its agent, in New York.  Moreover, "in the case of web sites displaying infringing

[material] the tort is deemed to be committed where the web site is created and/or maintained."

*Freeplay Music, Inc.*, 2005 WL 1500896, at *7 (quoting *Citigroup Inc. v. City Holding Co.*, 97

F. Supp. 2d at 567); *see DH Servs., LLC v. Positive Impact, Inc.*, 2014 WL 496875, at *11

(S.D.N.Y. Feb. 5, 2014) (same).

　　　Accordingly, Plaintiff has not established personal jurisdiction under C.P.L.R.

§ 302(a)(2).

### C.　　　Section 302(a)(3)

　　　C.P.L.R. § 302(a)(3) provides that a New York court will have personal jurisdiction over

an out-of-state defendant who "commits a tortious act without the state causing injury to person

or property within the state" under one of two circumstances: "if he (i) regularly does or solicits

business, or engages in any other persistent course of conduct, or derives substantial revenue

from goods used or consumed or services rendered, in the state, or (ii) expects or should

reasonably expect the act to have consequences in the state and derives substantial revenue from

interstate or international commerce; or owns, uses or possesses any real property situated within

the state."  N.Y. C.P.L.R. § 302(a)(3).  The provision was adopted by the New York Legislature

in 1966 to close a perceived loophole allowing a non-domiciliary who commit a tortious act

without the state that causes injury to person or property within the state to escape personal jurisdiction, but requires the plaintiff to show not only injury to person or property within the state but also that the defendant expects or should reasonably expect the tortious act to have consequences in the state and in addition derive substantial revenue from interstate commerce. *See Bensusan Rest. Corp.*, 126 F.3d at 29.  To establish jurisdiction under C.P.L.R. § 302(a)(3)(ii), Plaintiff must allege that "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce."  *Penguin Grp. (USA) Inc. v. Am. Buddha ("Penguin II")*, 946 N.E.2d 159, 162 (N.Y. 2011).

The third prong of the test—the requirement that the tortious act caused an injury to a person or property in New York—is the prong most squarely at issue here.  Whether the plaintiff's injury occurred "in" New York for purposes of § 302(a)(3) generally depends on "a situs-of-injury test, which asks [courts] to locate the original event which caused the injury." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (internal quotation marks omitted).  "The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff."  *Id.* (brackets and internal quotation marks omitted).

Plaintiff argues that a copyright owner's injury is deemed to take place where its business is lost or threatened.  Dkt. No. 28 at 17 (citing *Bonhac World Corp.*, 2023 WL 346950, at *8–9). Plaintiff also invokes the lines of cases holding that "in copyright infringement cases involving the uploading of copyrighted material onto the internet, the New York copyright owner alleging

infringement sustains an in-state injury pursuant to C.P.L.R. § 302(a)(3)(ii)." *Rogers v. Ecolor Studio*, 2013 WL 752256, at *2 (E.D.N.Y. Feb. 7, 2013), *report and recommendation adopted*, 2013 WL 750120 (E.D.N.Y. Feb. 27, 2013) (citing *Penguin II*, 946 N.E.2d 159); *see Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 607 (S.D.N.Y. 2016).

New York law with respect to the situs of the injury in copyright infringement cases has undergone substantial development in recent years. That development was initiated when the Second Circuit, recognizing a split of authority on the application of C.P.L.R. 302(a)(3)(ii) to copyright infringement cases against out-of-state defendants, certified to the New York Court of Appeals the following question:

> In copyright infringement cases, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?

*Penguin I*, 609 F.3d at 32. The New York Court of Appeals, in responding to the certified question, emphasized the "significant role" of the internet in the case, and therefore narrowed the question to read:

> In copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?

*Penguin II*, 946 N.E.2d at 161.

The Court of Appeals proceeded to answer the reformulated question that, "under the circumstances of this case, we conclude [the situs of the injury] is the location of the copyright holder." *Id.* at 161–62. The defendant in *Penguin II* had engaged in a form of "digital piracy" in which it uploaded four books for which plaintiff held copyrights onto its websites and made them available for downloading free of charge to any of its members with an internet connection.

*Id.* at 160.  The court recognized that its prior decisions had cited favorably to the Second

Circuit's decision in *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439

F.2d 428 (2d Cir. 1971), in which the Circuit court held that the situs of injury for two related

New York corporations which had lost customers in Kentucky and Pennsylvania as a result of

defendant's theft of the plaintiffs' trade secrets was the location in which they lost business and

not the principal place of business of the owner of the trade secrets.  *Penguin II*, 946 N.E.2d at

162–63 (discussing *Fantis Foods v. Standard Importing Co.*, 402 N.E.2d 122 (N.Y. 1980) and

*Sybron Corp. v. Wetzel*, 385 N.E.2d 1055 (N.Y. 1978)).  The court held, however, that the

internet was "by its nature . . . intangible and ubiquitous" and that "the convergence of two

factors persuad[ed it] that a New York copyright owner alleging infringement sustains an in-state

injury . . . when its printed literary work is uploaded without permission onto the Internet for

public access."  *Id.* at 163.  First, the court emphasized that the "crux" of the claim was not just

that the defendant had copied and uploaded four copyrighted books, but that "the intended

consequence of those activities" was "the instantaneous availability of those copyrighted works

. . . for anyone, in New York or elsewhere, with an Internet connection to read and download the

books free of charge."  *Id.* at 163–64.  As a result, there was "no singular location" where

plaintiff lost business; plaintiff's lost business occurred "throughout the country and perhaps the

world."  *Id.* at 164.  Second, the court emphasized "the unique bundle of rights granted to

copyright owners."  *Id*.  In light of the "multifaceted nature" of a copyright, "a New York

copyright holder whose copyright is infringed suffers more than . . . indirect financial loss," but

may also suffer other losses including "the loss or diminishment of the incentive to publish or

write."  *Id*.  Together, those two factors led the New York Court of Appeals to conclude that

where a copyrighted printed literary work is uploaded to the internet, the situs of the injury for

the purposes of determining long-arm jurisdiction under Section 302(a)(3) is the location of the copyright holder. *Id.* at 302.

The court also acknowledged, but found no need to address, a split in authority in this District on whether a New York copyright holder sustains an in-state injury in a copyright infringement case that does not allege digital piracy. *Penguin II*, 946 N.E.2d at 165 n.5. In *Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 WL 1500896 (S.D.N.Y. 2005), Judge Lynch held that a New York corporation which alleged that the defendant had broadcast its copyrighted musical works without the requisite license including by making those works available on websites accessible in New York did not allege a New York injury sufficient to invoke Section 302(a)(3) because the only economic loss claimed by the plaintiff was "as a result of the alleged unlicensed use of their copyrighted material" and the alleged unlicensed use did not occur in New York; the "critical events associated with the dispute" did not take place in New York. *Id.* at *8 (quoting *Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040, 1054 (S.D.N.Y. 1987)). By contrast, in *McGraw-Hill Cos.*, *Inc. v. Ingenium Tech. Corp.*, 375 F. Supp.2d 252 (S.D.N.Y. 2005), Judge Rakoff sustained personal jurisdiction against an out-of-state defendant charged with copyright and trademark infringement under Section 302(a)(3) on the theory that "[t]he torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held." *Id.* at 256.

Shortly thereafter, the Second Circuit had occasion to explore the confines of *Penguin II* in *Troma*, 729 F.3d 215. The plaintiff in *Troma* was a New York based corporation which held the distribution rights to two budget motion pictures and which claimed that the defendant had infringed its rights to the films by, without authority, entering into a distribution agreement for their publication in Germany. *Troma*, 729 F.3d at 217. The court reiterated that "'residence or

domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction'

under section 302(a)(3)." *Id.* at 281.  The Second Circuit distinguished *Penguin II*, which it

described as "carefully cabined" and "narrow," *id.* at 220, and held that jurisdiction over the out-

of-state defendant did not lie in New York under Section 302(a)(3) even though the copyright

holder was located in New York.  The court addressed separately and independently each of the

two theories of injury, the convergence of which the New York Court of Appeals had held in

*Penguin II* supported the exercise of personal jurisdiction.  The court held that plaintiff failed to

establish that the situs of the injury under the first theory, the loss of a sale, included New York

because the injury it alleged was not of the type that was "virtually impossible to localize."  *Id.*

Plaintiff's injury could be "'circumscribed' to a particular locality," *id.* (quoting *Penguin II*, 946

N.E.2d at 164), either where the defendants "hatched their scheme" to steal plaintiff's property

or the location where the scheme was "put into effect" by exploiting the works.  The court held

that plaintiff failed to establish the existence of the second theory of injury, that "out-of-state

infringement may harm the bundle of rights held by a New York-based copyright owner in New

York," because the plaintiff had not alleged "facts demonstrating a non-speculative and direct

New York-based injury to its intellectual property rights of the sort *Penguin II* recognized."  *Id.*

The court held that the usurpation of the rights to licensing agreements causing generalized harm

and giving rise to statutory damages was not sufficient to satisfy the second theory.  It

concluded: "we think it entirely implausible that the infringement alleged by Troma—discrete,

geographically circumscribed theft of the opportunity to license distribution of copyrighted

works—would cause such an injury" sufficient to satisfy Section 302(a)(3).  *Id.*

Based upon the principles outlined by the Court of Appeals in *Penguin II*, and further

explored by the Second Circuit in *Troma*, district courts in this Circuit applying New York law

have addressed in three cases the application of Section 302(a)(3) to copyright infringement claims brought by a New York resident for the publication of copyrighted material on the internet by an out-of-state defendant. *See Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, 2017 WL 449913, at *6 (S.D.N.Y. Jan. 18, 2017); *Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*, 2018 WL 3639929, at *11 (S.D.N.Y. July 10, 2018); *Freeplay Music, LLC v. Rigol Techs. USA, Inc.*, 2020 WL 564232, at *7 (S.D.N.Y. Feb. 4, 2020).  In all three cases, the courts concluded that jurisdiction would not lie on the basis that the plaintiff claimed an in-state injury.

In *Dave Arbogast*, the New York-based plaintiff alleged that the out-of-state defendant committed violations of the Copyright Act by uploading to the internet songs and sound recordings over which plaintiff held a copyright without paying a licensing fee.  2017 WL 449913, at *1.  The court held that the situs of the injury was in Ohio where the defendant was located and had uploaded the songs and sound recordings and not in New York because the "crux" of plaintiff's claim was that, as a result of the infringement, plaintiff had lost the defendant as a potential customer, "as well the licensing revenue that [the defendant] would otherwise have been required to pay to use the copyrighted material." *Id.* at *5.  The court ruled: "no other injury is alleged or can reasonably be inferred from the Amended Complaint," noting that Plaintiff did "not allege that it was deprived of revenue or potential customer when the videos were viewed on the Internet by third parties." *Id.*

In *Nian Infosolutions*, the defendant owned a commercial news and entertainment website, focusing on the Indian film industry, and it posted the plaintiff's copyrighted songs and sound recording on the internet without a license to promote itself and its products and services including the location and time of films in New York.  2018 WL 3639929, at *2.  The plaintiff

claimed it lost $284,250 as a result of the defendant's infringement.  *Id.*  The court held that the case was indistinguishable from *Arbogast*.  The plaintiff did not "allege that Nian copied or uploaded copies of Freeplay's musical recording that anyone with access to the Internet could then download and copy" or that it suffered "any injury when the videos incorporating its work [were] viewed or downloaded by others."  *Id.* at *11.  Plaintiff also did not plead "the requisite specific injury to its unique bundle of copyright rights."  *Id.* at *12.

Finally, in *Rigol*, the out-of-state defendant used five of the plaintiff's copyrighted musical compositions and sound recordings in product advertising and promotional materials posted to the internet without a license to do so.  2020 WL 564232, at *1.  The court followed *Arbogast* and *Nian* in ruling that plaintiff had not established personal jurisdiction under Section 302(a)(3).  It stated that the plaintiff's complaint pointed "almost exclusively to statutory and actual damages stemming from lost licensing opportunities," and had admitted that purchasing a retroactive license and paying past fees would have resolved the matter and that, as a result, the claimed injury could be "'circumscribed' to a particular locality."  *Id.* at *7 (quoting *Troma*, 729 F.3d at 220 (internal citations omitted)).

Plaintiff's complaint is nearly indistinguishable from *Arbogast*, *Nian*, and *Rigol*.  As in those cases, Plaintiff alleges that it is the exclusive licensee of the copyrighted works at issue.  Dkt. No. 12 ¶ 22.  It "licenses the Copyrighted Words for professional applications including editorial, advertising, corporate and non-profit use."  *Id.* ¶ 23.  Although the FAC is not clear in describing how Plaintiff suffered harm from Defendant's alleged infringement, *see id.* ¶ 16, it is plausible to read the Complaint to allege that Plaintiff lost licensing revenue from Defendant.  Plaintiff alleges that Defendant used the Copyrighted Words to drive visitorship to its website and thereby to generate revenue.  *Id.* ¶ 30.  Plaintiff alleges that Defendant's unauthorized use of

the Copyrighted Words was willful in that Defendant knew of "the need to seek a license for the use of the Copyrighted Works," but proceeded to use those works notwithstanding. *Id.* ¶ 34.  As relief, Plaintiff seeks, among other things, an accounting of Plaintiff's revenue, an award of Plaintiff's gains and profits, or, in the alternative statutory damages, as well as exemplary and punitive damages. Dkt. No. 12 at 9–10.  Plaintiff does not allege any other damages.  Plaintiff also does not allege that Defendant posted the Copyrighted Works with the purpose of making them available for visitors of its websites to download, or that any of the visitors to the websites can actually download images of the Copyrighted Works from its websites or otherwise use the images to generate content of their own.  Nor does Plaintiff allege that it suffers an incremental injury or harm when the images are viewed by visitors to those websites.  Thus, as in *Troma*, *Arbogast*, *Nian*, and *Rigol*, Plaintiff here alleges a harm that can "'circumscribed' to a particular locality." *Troma*, 729 F.3d at 220 (quoting *Penguin II*, 946 N.E.2d at 164).  It can be localized to the geographies where Plaintiff lost licensing opportunities. *See Rigol Techs. USA, Inc.*, 2020 WL 564232, at *7; *Nian Infosolutions Priv. Ltd.*, 2018 WL 3639929, at *11; *Arbocast*, 2017 WL 449913 at *5.  That location is where the customers are located. *Am. Eutectic Welding Alloys Sales Co.*, 439 F.2d 428.  It is not in Plaintiff's principal place of business.  Plaintiff has thus not properly alleged personal jurisdiction under N.Y.C.P.L.R. § 302(a)(3).

## III.     Rule 4(k)(2)

Although not asserted in the FAC or in its opposition to the motion to dismiss, Plaintiff asserts in a letter to the Court that if the Court concludes that there is no personal jurisdiction over Defendant pursuant to New York's long-arm statute, the Court should exercise personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(2). *See* Dkt. No. 37 at 3 ("[E]ven if the Court buys Defendant's claim that it is beyond the reach of New York's Long Arm Statute, jurisdiction under Fed. R. Civ. P. 4(k)(2) is proper.").

Federal Rule of Civil Procedure 4(k)(2), which is "commonly known as the federal long-arm statute," *Nian Infosolutions Priv. Ltd.*, 2018 WL 3639929, at *12, "permits federal courts to exercise personal jurisdiction over a defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United States as a whole," *BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591, 598–99 (S.D.N.Y. 2017) (quotation omitted); *see also George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co. Ltd.*, 2021 WL 168930, at *11 (S.D.N.Y. Jan. 18, 2021) ("The Rule 4(k)(2) jurisdictional analysis mirrors that of the standard personal jurisdiction analysis, except in one critical respect:  The due process analysis for Rule 4(k)(2) jurisdiction hinges on whether the non-resident has sufficient minimum contacts with the United States as a whole instead of with the specific forum state.").  "Rule 4(k)(2) is designed to 'fill a gap in the enforcement of federal law' for courts to exercise personal jurisdiction over defendants 'having sufficient contacts with the United States to justify the application of United States law . . . but having insufficient contact with any single state to support jurisdiction under state long-arm legislation.'" *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 760 (S.D.N.Y. 2004) (quoting Fed. R. Civ. P. 4(k)(2), advisory comm. note (1993)), *opinion clarified on denial of reconsideration*, 2005 WL 2585227 (S.D.N.Y. Oct. 13, 2005).  "Rule 4(k)(2) now allows the exercise of personal jurisdiction by a federal district court when three requirements are met: (1) the claim must arise under federal law; (2) the defendant must not be 'subject to jurisdiction in any state's courts of general jurisdiction'; and (3) the exercise of jurisdiction must be 'consistent with the United States Constitution and laws.'" *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting Fed. R. Civ. P. 4(k)(2)).

The Second Circuit has not decided how Plaintiff's burden with respect to the second requirement is to be met.  *See Abbott Labs. v. Adelphia Supply USA*, 2017 WL 11665423, at *5 (E.D.N.Y. Mar. 30, 2017).  In the absence of direction from the Second Circuit, "Courts in this Circuit have therefore made use of the 'burden-shifting framework' of the First Circuit, which requires that, to satisfy this element, the plaintiff 'must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state.'"  *Id.* (quoting *Aqua Shield, Inc. v. Inter Pool Cover Team*, 2007 WL 4326793, at *8 (E.D.N.Y. Dec. 7, 2007) and citing *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 40 (1st Cir. 1999)); *see also Cordice v. LIAT Airlines*, 2015 WL 5579868, at *5 (E.D.N.Y. Sept. 22, 2015); *TAGC Mgmt., LLC v. Lehman*, 2011 WL 3796350, at *6 (S.D.N.Y. Aug. 24, 2011); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010); *In re South African Apartheid Litig.*, 643 F. Supp. 2d 423, 429 (S.D.N.Y. 2009).

Here, Plaintiff's "claim arises under the federal Copyright Act, thus satisfying the first element."  *Nian Infosolutions Priv. Ltd.*, 2018 WL 3639929, at *13.  Plaintiff has not, however, certified that, based upon the information currently available to it, Defendant is not subject to jurisdiction of any state.  The Court therefore cannot conclude based on the pleadings before it that Plaintiff has made a *prima facie* showing that the Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2).[1]

---

[1] Plaintiff also argues that the Court should permit it jurisdictional discovery.  "A district court has wide latitude to determine the scope of discovery, . . . and is typically within its discretion to deny jurisdictional discovery when the plaintiff [has] not made out a prima facie case for jurisdiction."  *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 133 n.6 (2d Cir. 2022) (internal quotation marks and citations omitted) (alteration in original) (quoting *Frontera Res. Azer. Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009)); *see also Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18–19 (2d Cir. 2015) (summary order) ("Where plaintiffs do not establish a prima facie case that the district court has jurisdiction over the defendant, the district court does not err in denying jurisdictional discovery.").  Plaintiff does

**CONCLUSION**

The motion to dismiss the FAC for lack of personal jurisdiction is GRANTED.  The FAC is dismissed without prejudice to Plaintiff filing an amended complaint by May 8, 2024.  If Plaintiff does not file an amended complaint by May 8, 2024, the Court will direct the Clerk of Court to close the case.  The motion to dismiss for failure to state a claim is denied as moot.

The Clerk of Court is respectfully directed to close Dkt. No. 21.


SO ORDERED.


Dated: April 8, 2024
      New York, New York                                     LEWIS J. LIMAN
                                                  United States District Judge

---

not identify a basis for the Court to permit jurisdictional discovery.  That Defendant enjoys contractual relations with companies in New York does not alone give Plaintiff the right to conduct discovery in an effort to identify some basis for personal jurisdiction.  *See Frontera*, 582 F.3d at 401.  And, as to the claim that Plaintiff suffered an injury in New York, evidence of such an injury—if it existed—would be in the possession of Plaintiff and is not the proper subject for jurisdictional discovery.