UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                                        :
CREATIVE PHOTOGRAPHERS, INC.,                           :
                                                        :
                              Plaintiff,                :
                                                        :                23-cv-7106 (LJL)
              -v-                                       :
                                                        :            OPINION AND ORDER
GRUPO TELEVISA, S.A.B.,                                 :
                                                        :
                              Defendant.                :
                                                        :
----------------------------------------------------------------------X

```
┌────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:_____           │
│ DATE FILED:_02/04/2025__        │
└────────────────────────────────┘
```

LEWIS J. LIMAN, United States District Judge:

Defendant Grupo Televisa, S.A.B. ("Grupo Televisa" or "Defendant") moves to dismiss the Second Amended Complaint ("SAC") of Plaintiff Creative Photographers, Inc. ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. No. 53.

For the reasons that follow, the motion to dismiss is granted.

## BACKGROUND

For the purposes of Defendant's motion to dismiss the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is limited to reviewing the well-pleaded allegations of the SAC as supplemented by any documents incorporated by reference and assumes the truth of the SAC's well-pleaded allegations. *See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021). For the purposes of Defendant's motion to dismiss the SAC for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court is not limited to the SAC's well-pleaded allegations, but may also consider any affidavits, declarations, or exhibits submitted by the parties. *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333

(2d Cir. 2018).  The Court first reviews the SAC's allegations and then the evidence submitted in connection with Defendant's motion to dismiss for lack of personal jurisdiction.

## I.    Allegations of the SAC[1]

### A.    The Relevant Parties

Plaintiff is a New York corporation with its principal place of business in New York, New York.  Dkt. No. 46 ¶ 2.  Plaintiff purports to be a "boutique style" agency that licenses the work of photographers in both traditional and new media platforms for a variety of uses.  *Id.* ¶ 77. Plaintiff claims to hold the exclusive licenses of the copyrights to twenty-one photographic images (the "Copyrighted Works") that are attached as Exhibit A to its complaint.  *Id.* ¶¶ 78–80; Dkt. No. 46-1.  It has obtained registrations with the United States Copyright Office for the Copyrighted Works.  Dkt. No. 46 ¶¶ 82, 87; Dkt. No. 46-2.  Plaintiff licenses the Copyrighted Works for professional applications, including editorial, advertising, corporate and non-profit use.  Dkt. No. 46 ¶ 23.  The market for Plaintiff's works is "high-end magazines, like *Vogue* or *Elle*."  *Id.* ¶ 74.

Defendant is a multimedia company located in Mexico.  *Id.* ¶ 3.  Prior to 2022, Defendant was one of the largest Spanish-language content providers in the world.  *Id.* ¶¶ 4, 83.  Defendant does not have a headquarters in the United States, but it is listed on the New York Stock Exchange. *Id.* ¶¶ 15, 44.  Plaintiff alleges that Defendant conducts "significant and extensive" business with companies in the United States including, prior to 2021, entering into distribution contracts with Sony Pictures Studios, Viacom, and ViacomCBS.  *Id.* ¶¶ 22–24, 28.  Defendant has bank accounts with banks that are based in New York.  *Id.* ¶ 44.  Defendant has also been a party to several litigations in federal courts in the United States.  *Id.* ¶¶ 25–27, 35.

---

[1] See *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, 2024 WL 1533189, at *1 (S.D.N.Y. Apr. 8, 2024), for a brief summary of the allegations of the First Amended Complaint ("FAC").

Univision Holdings, Inc. ("Univision Holdings"), Univision Communications, Inc. ("Univision Communications"), and Univision Holdings II, Inc. ("Univision Holdings II," and, together with Univision Holdings and Univision Communications, the "Univision Entities") are incorporated in Delaware and share a principal place of business in New York. *Id.* ¶¶ 5–7.

At one point, prior to 2021, Defendant contracted with Univision Communications, or an affiliate of Univision Communications, in a "Program License Agreement" for Defendant's Spanish language content to be distributed in the United States. *Id.* ¶ 29. In 2021, Defendant contracted with Univision Communications, Univision Holdings, or one of their affiliates to transfer various copyright assets of Defendant to Univision Communications, or a company related to Univision Communications, in exchange for $4.8 billion. *Id.* Upon information and belief, Plaintiff alleges those transferred assets included web properties at issue in this litigation. *Id.*

In 2022, Defendant effected a merger with the Univision Entities. *Id.* ¶ 8. As a result of that merger, Televisa Univision ("TU") was formed and the Spanish language content and assets owned or controlled by Defendant were transferred to TU's ownership or control. *Id.* ¶¶ 8, 10.[2] TU is a multimedia company "doing business in New York" and the controlling company of Univision Communications. *Id.* ¶¶ 4, 32. TU has engaged in numerous business transactions with New York entities relating to its broadcast networks and online brand. *Id.* ¶ 38.

Plaintiff alleges upon information and belief that Defendant is the largest shareholder of TU. *Id.* ¶ 32. Plaintiff believes Defendant has the ability to exercise control over Univision Communications or other Univision Entities and to benefit from the resources and profits of Univision Communications or other Univision Entities. *Id.* ¶¶ 33, 40–43, 65.

---

[2] The SAC states that "[t]he exact corporate structure of the merger deal, and exchange of assets, is [sic] unclear from the press releases following the merger." *Id.* ¶ 9.

Defendant, TU, and the Univision Entities share some common management. Plaintiff alleges upon information and belief that Carlos Ferriero served a leadership role as Chief Financial Officer at Univision Communications, Defendant, and TU; Pilar Ramos served as General Counsel and Corporate Secretary for Univision and TU; and Jessica Rodriguez served as Chief Brand Officer for Univision[3] and TU  *Id.* ¶ 66.  Plaintiff further alleges upon information and belief that the officers and employees of TU and the Univision Entities work together out of a single headquarters in New York.  *Id.* ¶ 67.

**B.    The Infringing Websites**

At some time after April 8, 2020, Plaintiff discovered that the Copyrighted Works were being displayed on twenty websites "which were used by [Defendant] prior to 2022 and TU after the 2022 merger, to promote and sell Defendant's various brands of Spanish language content, including its magazines, television dramas, and news content, to consumers in the United States, including consumers in New York" (the "Infringing Websites").  *Id.* ¶¶ 47–48, 86–87.[4]  Plaintiff alleges that Defendant "targeted the New York market with its various brands of Spanish language content and the infringing URLs each serve the purpose of promoting [Defendant's] brands and growing [Defendant's] revenues and profits."  *Id.* ¶ 50.

Plaintiff characterizes Defendant's circulation as "low budget 'click-bait journalism'" which it defines as "journalistic content that is rapidly churned out by websites with little text or

---

[3] It is not clear from the SAC for which Univision Entity Rodriguez is alleged to have served as Chief Brand Officer.

[4] The Infringing Websites are: (1) www.tvynovelas.com, (2) lasestrellas.tv, (3) telehit.com, (4) dam.tbg.com.mx, (5) www.cosmopolitan.com.mx, (6) www.tuenlinea.com, (7) televisa.brightspotcdn.com, (8) www.televisa.com, (9) stg.tuenlinea.com, (10) www.tvynovelas.com, (11) erizos.mx, (12) dam.tvynovelas.com, (13) www.sectorcine.com, (14) www.telehit.com, (15) www.instagram.com, (16) www.harpersbazaar.mx, (17) dam.harpersbazaar.mx, (18) st1.uvnimg.com, (19) www.univision.com, and (20) www.tudn.com.  *Id.* ¶ 47.

thought but is meant to attract quick eyeballs to sensationalized headlines and eye catching photography to drive up web traffic to the advertising displayed above, below, and besides the infringing content." *Id.* ¶ 74.  Plaintiff alleges that use of its works on click-bait websites lessens the works' exclusivity and that "*Vogue* or *Elle* are not going to use a work of Plaintiff's that has appeared as viral, click-bait material all over the Internet." *Id.* ¶ 74.

Plaintiff attaches as Exhibit C to the SAC a list of 110 uniform resource locators ("URLs"), where Plaintiff has found its photographs being used without its permission by Defendant prior to filing suit. *Id.* ¶ 89; Dkt. No. 46-3.  Since this litigation began, many of the infringing URLs have been disconnected and no longer display the Copyrighted Works.  Dkt. No. 46 ¶ 39.

Plaintiff states that the Infringing Websites are interactive, rather than passive, websites. *Id.* ¶¶ 51–64.  For example, one of the Infringing Websites which was once owned by Defendant, but is now owned by a Univision Entity and controlled by TU, seeks visitors' information by inviting the visitor to take quizzes. *Id.* ¶ 52 (alleging that "the website www.tuenlinea.com, touts itself as a vibrant platform that caters to various interests related to news and entertainment" and "[v]iewers are encouraged to interact with the website, to take quizzes to find out, for example, if the viewer 'would be the best friend for Karina de Aespa,' a certain celebrity, or to find out if 'your hookup misses their Ex,' among many other quizzes").  Certain others of the Infringing Websites encourage visitors to purchase subscriptions or print materials or to sign up for alerts. *Id.* ¶¶ 53 (alleging "the website [sic] www.cosmopolitan.com.mx and www.harpersbazaar.mx encourage viewers to purchase issues of magazines through the 'App store,' 'Zinio,' 'Press Reader,' and 'Magzter'"), 54 (alleging "[t]he website www.televisa.com . . . includes an investor link where users are encouraged to sign up to receive investor alerts via email"), 55 (alleging "[t]he websites [sic] www.tvynovelas.com promotes and sells TVyNovelas, a Mexican magazine published on a

monthly basis" and "encourages users to purchase subscriptions of the print publication"), 56 (alleging "[t]he website www.telehit.com . . . includes an investor link where users are encouraged to sign up to receive investor alerts via email"), 57 (alleging "[t]he website www.tudn.com promotes and sells subscriptions to TUDN, a Spanish language sports channel once owned by [Defendant] and now believed to be owned by a Univision Entity but controlled by TU.").

Plaintiff also alleges, upon information and belief, that the Infringing Websites "obtain information from cookies, or tiny text files that are stored on the devices of New Yorkers and when New Yorkers visit the websites owned and [sic] by [Defendant] and/or TU, [Defendant] and/or TU retrieve cookies from New Yorkers to learn information about users' browsing habits, preferences, and interactions and are used [sic] to follow New York across different sites, creating a profile of interests and behaviors among New York users." *Id.* ¶ 58. Plaintiff further alleges, upon information and belief, that the Infringing Websites engage in "device fingerprinting," "behavioral profiling," "data mining," "cookie syncing," and "third-party scripts." *Id.* ¶¶ 59–64. According to Plaintiff, device fingerprinting allows Defendant to identify users in New York based on unique characteristics of their devices, such as browser settings, screen resolution, and installed fonts, even if those users switch devices. *Id.* ¶ 59. Defendant engages in behavioral profiling by collecting data on the browsing history, search queries, and interactions of New York users of the Infringing Websites and then compiling that data into behavioral to tailor ads and content specifically for New York users. *Id.* ¶ 60. Data mining is similar to behavioral profiling and involves collecting and analyzing data from New York users to infer more about behavior and preferences. *Id.* ¶ 61. It permits advertisers on Defendant's websites to adjust prices based on user profiles. *Id.* Cookie syncing allows entities tracking users online to share information gathered, linking pseudonymous numerical identifiers associated with user profiles so New York users can

be recognized across different websites.  *Id.* ¶ 62.  The Infringing Websites include third-party advertising or tracking script that permit the browsing history of New York users to be tracked and linked across different sites if the sites use the same network.  *Id.* ¶ 63.

## II.    Evidence Submitted in Connection with Defendant's Motion to Dismiss for Lack of Jurisdiction

Defendants' memorandum of law in support of the motion to dismiss the SAC relies upon declarations that had been submitted by Liliana Martinez Vela, Defendant's Legal Director of Corporate and Finance, in support of the prior motion to dismiss the FAC.  Dkt. No. 54 at 21 (citing Dkt. Nos. 23, 31).  In those declarations, Vela stated that Defendant does not direct any advertising specifically toward New York or United States residents, or advertise in any publication that is directed primarily toward New York or United States residents.  Dkt. No. 23 ¶ 9.  She further asserted that Defendant "is a wholly separate legal entity from TU," that TU is not a subsidiary of Defendant, and that Defendant does not control TU.  *Id.* ¶ 10.  She also declared that Defendant "does not control a New York based company known as 'Univision.'" Id. ¶ 11.  Vela also declared that Defendant "has not contracted or otherwise transacted business with [TU] or Univision concerning the allegedly infringing content at issue in this case."  Dkt. No. 31 ¶ 5.

On June 5, 2024, in support of its motion to dismiss, Defendant submitted an attorney declaration by Ariel Peikes.  Dkt. No. 55.  Peikes' declaration states that on June 3, 2024, he attempted to access the 110 URLs listed in Plaintiff's Exhibit C to the SAC, but he found that none of the URLs opens to a webpage.  *Id.* ¶¶ 1–2.  He explains that for each purported URL in Plaintiff's Exhibit C, rather than list URLs, Plaintiff lists only website homepages followed by a file name.  *Id.* ¶ 4.  Furthermore, certain of the web addresses listed in the SAC and in Plaintiff's Exhibit C do not exist.  *Id.* ¶ 6 (e.g. the web address st1.uvnimg.com does not exist).  Peikes also avers that according to the WHOIS.com directory of the registrants for web domains, the owner

of www.univision.com is Univision Communications, and the owner of www.tudn.com is UniVision Interactive Media, Inc. *Id.* ¶ 7, Dkt. Nos. 55-1, 55-2.

On June 27, 2024, Vela submitted a declaration alongside Defendant's reply memorandum of law in further support of the motion to dismiss. Dkt. No. 59. Vela reiterated several of the statements she made in her prior declarations in support of Defendant's motion to dismiss the FAC. *Id.* (citing Dkt. Nos. 23, 31). In particular, she noted her prior testimony that Defendant and its affiliates and agents do not own, operate, or manage many of the URLs at issue. *Id.* ¶ 5 (citing Dkt. No. 16–17, 21–22, 24). Vela also noted her prior testimony that Defendant "has not contracted or otherwise transacted business with Televisa Univision or Univision concerning the allegedly infringing content at issue in this case." *Id.* ¶ 6 (citing Dkt. No. 31 ¶ 5). Vela states that as of January 31, 2024, Defendant did not contract with TU or with any of the Univision Entities "regarding the websites dam.tbg.com.mx, editorialtelevisa.com.mx, stg.tuenlinia.com, and tvnovelas.com (dam.tyvnoelas.com)." *Id.* ¶ 8. According to Vela, on January 31, 2024, Defendant "carried out a spin-off through which, among other assets, its former publishing business operated by Editorial Televisa, S.A. de C.V., was separated from [Defendant], to become an independent entity." *Id.* ¶ 7. As a result of that spinoff, Vela avers that Defendant "no longer controls Editorial Televisa, S.A. de C.V. and any of its assets or operations." *Id.*

Other than the SAC and its exhibits, Plaintiff did not submit any declarations or evidence in response to Defendant's motion to dismiss the SAC for lack of personal jurisdiction.[5]

---

[5] Although Plaintiff did submit a declaration in connection with its opposition to the motion to dismiss the FAC, Dkt. No. 29, Plaintiff did not reference that declaration in its memorandum of law in opposition to the motion to dismiss the SAC, Dkt. No. 57.

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed on August 11, 2023.  Dkt. No. 1.  On November 2, 2023, Plaintiff filed the First Amended Complaint ("FAC").  Dkt. No. 12.  The FAC asserted claims against Defendant as well as TU and the Univision Entities.  *Id.*

On November 22, 2023, Defendant moved to dismiss the FAC for lack of personal jurisdiction and failure to state a claim.  Dkt. No. 21.  On April 8, 2024, the Court granted Defendant's motion to dismiss the FAC for lack of personal jurisdiction without prejudice and without reaching Defendant's argument that the FAC failed to state a claim to relief.  Dkt. No. 41; *Creative Photographers*, 2024 WL 1533189.

Plaintiff filed the SAC on May 13, 2024, again asserting claims against Defendant as well as against TU and the Univision Entities.  Dkt. No. 46.  The SAC asserts claims against Defendant, TU, and the Univision Entities for: (1) direct copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement.  *Id.* ¶¶ 109–142.

On June 5, 2024, Defendant moved to dismiss the SAC for lack of personal jurisdiction and failure to state a claim.  Dkt. No. 53.  Defendant filed a memorandum of law and a declaration in support of the motion.  Dkt. No. 54–55.  On June 19, 2025, Plaintiff filed a memorandum of law in opposition to the motion to dismiss.  Dkt. No. 57.  On June 27, 2025, Defendant filed a reply memorandum of law and a declaration in further support of the motion to dismiss.  Dkt. No. 58–59.  On July 1, 2024, Defendant filed a notice of supplemental authority in support of the motion to dismiss, attaching Judge Rakoff's opinion in *Minden Pictures, Inc. v. Grupo Televisa, S.A.B.*, 738 F. Supp. 3d 458 (S.D.N.Y. 2024), and a copy of the first amended complaint in that case.  Dkt. No. 60.

On January 15, 2025, Plaintiff, TU and the Univision Entities filed a purported stipulation of dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1).  Dkt. No. 87.  On

January 16, 2025, the Court indicated that it would construe the filing as a motion by Plaintiff to dismiss all claims against TU and the Univision Entities pursuant to the Court's powers under Rules 15 and 21 of the Federal Rules of Civil Procedure as well as its inherent power, and granted that motion.  Dkt. No. 88.[6]

## LEGAL STANDARD

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'"  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Where, as here, jurisdictional discovery has not been conducted, the plaintiff need only make a *prima facie* showing by his pleadings and affidavits that jurisdiction is proper.  *Id.* at 85; *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012).  "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir.

---

[6] The Court did not so order the dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1) because the filing did not dismiss of all the parties or the action in its entirety—the situations in which Rule 41(a)(1) applies.  *See Huang v. Shanghai City Corp.*, 2022 WL 2306870, at *2 (S.D.N.Y. June 27, 2022).

1993) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam) (citation omitted)). The court must "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in [its] favor." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 131 (2d Cir. 2022) (quoting *DiStefano*, 286 F.3d at 84).

Even so, the *prima facie* showing required to establish personal jurisdiction prior to an evidentiary hearing still "must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Dorchester Fin. Sec.*, 722 F.3d at 85. While the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs," *id.*, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quotations omitted). "[C]onclusory allegations are not enough to establish personal jurisdiction." *Gmurzynska v. Hutton,* 257 F. Supp. 2d 621, 625 (S.D.N.Y.2003) (quoting *Marczeski v. Kamba*, 2001 WL 237204, at *1 (D. Conn. Feb. 23, 2021)), *aff'd,* 355 F.3d 206 (2d Cir. 2004); *accord Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 496–97 (S.D.N.Y. 2016).

## DISCUSSION

Defendant argues that the SAC should be dismissed because: (1) Plaintiff has failed to establish that the Court may exercise personal jurisdiction over Defendant; (2) Plaintiff fails to state a claim against Defendant where it identifies conduct perpetrated by Editorial Televisa S.A. de C.V., and (3) the SAC improperly relies on group pleading in violation of Federal Rule of Civil Procedure 8(a). Dkt. No. 53–54. The Court starts, as it must, with personal jurisdiction. *See Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 14 (S.D.N.Y. 2022); *N. Fork Partners Inv. Holdings, LLC v. Bracken*, 2020 WL 6899486, at *4 (S.D.N.Y. 2020). Because the Court finds

that it does not have personal jurisdiction over Defendant, it does not reach Defendant's other stated grounds for dismissal.

"In litigation arising under federal statutes that do not contain their own jurisdictional provisions, such as the Copyright Act under which suit is brought in the case at bar, federal courts are to apply the personal jurisdiction rules of the forum state, provided that those rules are consistent with the requirements of Due Process." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010); *accord Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000). "There are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to N.Y. CPLR § 301 or specific jurisdiction pursuant to N.Y. CP[LR] § 302." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (Nathan, J.) (quotation and alteration omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). "Where, as here, jurisdictional discovery has not been conducted, the plaintiff need only make a prima facie showing by his pleadings and affidavits that jurisdiction is proper." *Kreit v. Byblos Bank S.A.L.*, 2023 WL 6977448, at *3 (S.D.N.Y. Oct. 22, 2023), *aff'd*, 2025 WL 338194 (2d Cir. Jan. 30, 2025).

Plaintiff asserts that the Court may exercise specific personal jurisdiction over Defendant, pursuant to N.Y. C.P.L.R. § 302(a)(1)–(3), New York's long-arm statute, or alternatively may exercise specific or general personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(2), the federal long-arm statute.

## I.    Specific Jurisdiction

To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, New York courts engage in a two-step analysis. *See Chloe v. Queen Bee of Beverly*

*Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).[7]  First, under the Federal Rules of Civil Procedure, the Court applies the forum state's long-arm statute.  *See Chloe*, 616 F.3d at 163; *see also* Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).  "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution."  *Chloe*, 616 F.3d at 164; *see also Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023).  "Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013).

Section 302(a) of New York's long-arm statute provides for specific personal jurisdiction. It states:

> (a)      Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> > 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> >
> > 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> >
> > 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> >
> > > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

---

[7] An exception to this general rule exists where the federal statute provides for national service of process.  *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).  That exception is not implicated here.

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . .

N.Y. C.P.L.R. § 302(a).

### C.    Section 302(a)(1)

N.Y. C.P.L.R. § 302(a)(1) permits a court to "exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state," so long as the cause of action arises from such business. *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 362 (S.D.N.Y. 2020), *adhered to in part on reconsideration*, 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020). Therefore, to establish personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1), "Plaintiff must allege that (1) Defendant has 'transacted business' in New York, and (2) the claim asserted arises from that business activity." *Guglielmo v. JEGS Automotive, Inc.*, 2021 WL 1026168, at *3 (S.D.N.Y. 2021) (quoting *Eades v. Kennedy PC Law Office*s, 799 F.3d 161, 168 (2d Cir. 2015)).

Under the first prong of Section 302(a)(1)—the "transacting business" prong of the inquiry—a defendant that is not domiciled in New York need not be physically present in the state to "transact business," "so long as the defendant has engaged in 'purposeful activity,' for example, 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Spin Master Ltd.*, 463 F. Supp. 3d at 362 (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246–47 (2d Cir. 2007)). Section 302(a)(1) "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 40 (N.Y. 1988).

The second prong of Section 302(a)(1) requires that the plaintiff's causes of action "arise from" the defendants' transactions in New York. *See Dicks v. Cooks Junction, Inc.*, 2023 WL 2775830, at *4 (S.D.N.Y. Apr. 4, 2023). Under the second prong, "[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines*, 490 F.3d at 246 (citation omitted).

Plaintiff identifies two categories of Defendant's alleged business transactions that it claims subject Defendant to personal jurisdiction in New York pursuant to N.Y. C.P.L.R § 302(a)(1): (1) Defendant's transactions with TU and the Univision Entities, and (2) Defendant's transactions with New York visitors to the Infringing Websites. Dkt. No. 57 at 6–11.[8]

Plaintiff first claims argues that Defendant transacted business within the meaning of the statute by transacting with TU and the Univision Entities—all of which are companies based in New York—"concerning the reproduction, distribution, and publicly display of Spanish language content to New York residents in New York and other consumers of Spanish language content through the United States." Dkt. No. 57 at 7. These allegations are insufficient to establish the "transacting business" prong of section 302(a)(1).

The SAC alleges that Defendant "transacted business on numerous occasions with the New York headquartered entity Univision Communications." Dkt. No. 46 ¶ 29. "[S]uch a conclusory statement is insufficient to establish personal jurisdiction." *Sikhs for Just. v. Nath*, 893 F. Supp.

---

[8] Plaintiff also alleges that "[a]s evidence of further New York business transactions, [Defendant] is listed on the New York Stock Exchange and, upon information and belief, has accounts with banks based in New York." Dkt. No. 46 ¶ 44. However, Plaintiff does not argue or allege that Defendant's infringing conduct in any way relates to Defendant's stock or bank accounts, and thus those allegations cannot support specific personal jurisdiction. *See Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 2012 WL 6186598, at *4 (S.D.N.Y. Dec. 12, 2012), *aff'd*, 560 F. App'x 52 (2d Cir. 2014).

2d 598, 623 (S.D.N.Y. 2012); *see also Battista v. Flexi USA Inc.*, 2014 WL 12828973, at *3 & n.1 (E.D.N.Y. June 30, 2014) (holding that conclusory, unsupported allegations "cannot support a finding of personal jurisdiction, particularly because they are contradicted by the facts set forth in Defendant's affidavit").[9]

Even the SAC's more specific allegations regarding Defendant's transactions with the Univision Entities fall short because they do not actually allege that Defendant transacted business with New York entities. Plaintiff alleges that "[i]n one such transaction, [Defendant] contracted with Univision Communications, Inc. *or an affiliate of Univision Communications, Inc.* in a "Program License Agreement." Dkt. No. 46 ¶ 29 (emphasis added). "In another example, in 2021, Defendant contracted with Univision Communications, Inc. or Univision Holdings, Inc. *or its affiliates* or agents in order to transfer to Univision Communications, Inc., *or a company related to Univision Communications, Inc.*, various copyright assets of [Defendant]." *Id.* ¶ 29 (emphasis added). Plaintiff's allegation concerning the creation of TU also suffers from this defect as Plaintiff alleges that Defendant "transacted business with the New York based entity Univision Holdings, Inc. II *or entities affiliated with Univision Holdings, Inc. II* in order to create TU and

---

[9] Although the Court's prior opinion on the motion to dismiss the FAC quoted the statement in *Allojet PLC v. Vantage Associates*, that where a Defendant "rebuts a plaintiff's unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and the plaintiff does not counter that evidence—the allegation may be deemed refuted," *Creative Photographers*, 2024 WL 1533189, at *3 (quoting *Allojet PLC v. Vantage Assocs.*, 2005 WL 612848, at *3 (S.D.N.Y. Mar. 15, 2005)), that quotation was infelicitously invoked. The Second Circuit has clarified that unless the court holds an evidentiary hearing, a district court evaluating a motion to dismiss a complaint for lack of personal jurisdiction may not resolve factual disputes in the defendant's favor. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (holding that to permit otherwise would be "inconsistent with the framework set forth in *Ball* [*v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990)]"). Nonetheless it remains true that where a plaintiff advances only conclusory allegations to contradict defendant's specific averments or evidence refuting jurisdiction, such allegations will not suffice to create the necessary *prima facie* showing that the court may exercise personal jurisdiction. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 676–78 (2d Cir. 2013).

transfer copyrights with respect to a number of infringing websites at issue in this litigation." *Id.* ¶ 31 (emphasis added). Where the SAC does not clarify whether Defendant transacted with a New York entity or with a New York entity's affiliates or relations of unknown residence, such equivocal allegations do not permit the Court to infer that Defendant engaged in any purposeful activity in the state. *See FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425, at *6 (S.D.N.Y. Aug. 18, 2017) ("For purposes of alleging that there is personal jurisdiction over each Foreign Defendant, plaintiffs may not refer to affiliated defendants by a conclusory collective name unless plaintiffs adequately allege that the conduct of one affiliate is attributable to another."); *see also In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 343 F. Supp. 2d 208, 216–17 (S.D.N.Y. 2004). Plaintiff's allegations place it within the realm of possibility that Defendant undertook these transactions with New York entities, but that is not enough to discharge Plaintiff's burden. "A prima facie showing of jurisdiction does not mean that the plaintiff must show only some evidence that the defendant is subject to jurisdiction; it means that the plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 116 (S.D.N.Y. 2023); *see also Trinkhaus v. TGI Tours, Inc.*, 2022 WL 464213, at *2 (S.D.N.Y. Feb. 15, 2022) (holding that a "conclusory allegation, stated in the disjunctive, is a wholly insufficient basis for [the court] to 'assure' [it]self that [it] may statutorily or constitutionally exercise jurisdiction over Defendant").

Plaintiff next argues that the Infringing Websites themselves establish that Defendant transacted business in New York. Dkt. No. 57 at 10–11. As the Court explained in its prior opinion, "the mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)." *Creative Photographers*, 2024

WL 1533189, at *7 (quoting *Megna*, 166 F. Supp. 3d at 496–500). Instead, courts "locate the internet activity at issue on a 'sliding scale of interactivity' between 'passive' websites that merely make information available to interested visitors and 'interactive' websites through which a defendant clearly 'does business over the internet.'" *Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 358 (S.D.N.Y. 2009) (quoting *Best Van Lines*, 490 F.3d at 251). "'Passive' websites, which merely make information available to viewers, have been analogized to an advertisement in a nationally-available magazine or newspapers, and do not without more justify the exercise of jurisdiction over the defendant." *Creative Photographers*, 2024 WL 1533189, at *7 (citation omitted). "Fully 'interactive' websites, which are used to purposefully sell goods or services in New York, or charge membership fees to registered users in New York, can be sufficient to trigger jurisdiction under § 302(a)(1) where the cause of action arises out of such purposeful activity." *Id.* (citation omitted).

The SAC characterizes the Infringing Websites as "interactive" because some of the websites encourages visitors to purchase subscriptions or print materials or to sign up for alerts as well as because the websites acquire and utilize user data through interactive quizzes, cookies, device fingerprinting, behavioral profiling, data mining, cookie syncing, and third-party scripts. Dkt. No. 46 ¶¶ 51–64. Those allegations fail to show that the Infringing Websites were sufficiently interactive to warrant a finding that Defendant transacted business in New York through the sites. Although Plaintiff alleges that two of the Infringing Websites made subscriptions or print materials available for sale, *id.* ¶¶ 55, 57, it does not allege that either website ever made a sale in New York. "[T]hat failure is fatal: as other courts in this district have observed '[i]t stretches the meaning of "transacting business" too far to subject defendants to personal jurisdiction in any state merely for operating a website . . . without some evidence or allegation that commercial activity in that state

actually occurred or was actively sought.'" *Royalty Network Inc. v. Dishant.com, LLC*, 638 F.

Supp. 2d 410, 420 (S.D.N.Y. 2009) (quoting *Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 WL

1500896, at *7 (S.D.N.Y. June 23, 2005)); *accord Capitol Recs.*, 611 F. Supp. 2d at 359; *Philpot*

*v. Kos Media LLC*, 2017 WL 2270248, at *11 (S.D.N.Y. Apr. 21, 2017), *report and*

*recommendation adopted*, 2017 WL 2269531 (S.D.N.Y. May 23, 2017).  Similarly, the fact that a

user *could* sign up for alerts, or provide information through interactive quizzes, is insufficient to

confer jurisdiction because Plaintiff fails to allege that any New York resident actually did so.  *See*

*Royalty Network*, 638 F. Supp. 2d at 419–20 (holding that the defendant was not subject to

jurisdiction in New York where defendant's "website allow[ed] New Yorkers to register, a process

that require[d] visitors to provide personal information to the website and, in return, allow[ed]

them to create and save personal preferences" but plaintiff "provide[d] no evidence that any New

York resident actually engaged in any such transactions—e.g., registered with the website").  The

Infringing Websites' other user tracking behavior does not indicate Defendant purposefully availed

itself of the forum as Plaintiff does not allege such tracking was directed at New York; instead it

seems that alleged behavior is indistinguishable from Defendant's interaction with users located

in any other jurisdiction.  *See Blockchange Ventures I GP, LLC. v. Blockchange, Inc.*, 2021 WL

308277, at *2 (S.D.N.Y. Jan. 29, 2021) ("[T]he mere accessibility of Defendant's website and its

use of cookies is insufficient to constitute transacting business in New York."); *see also Capitol*

*Recs.*, 611 F. Supp. 2d at 359.[10]

---

[10] Defendant also argues that at least some of the URLs Plaintiff identified cannot support personal
jurisdiction pursuant to Section 302(a)(1) because certain of the domains do not exist and the
WHOIS.com registry shows that others are owned by entities other than Defendant.  Dkt. No. 54
at 4–5 (citing Dkt. No. 55 ¶¶ 6, 7, Dkt. Nos. 55-3, 55-4).  This contradicts Plaintiff's allegations
that the listed URLs represent the places where Plaintiff found its photographs being used without
its permission by Defendant.  Dkt. No. 46 ¶ 89; Dkt. No. 46-3.  On this motion to dismiss, the
Court cannot resolve these dueling factual contentions and therefore accepts Plaintiff's allegation

Plaintiff has failed to make a *prima facie* case that personal jurisdiction is proper under Section 302(a)(1).

### D.        Section 302(a)(2)

N.Y. C.P.L.R. § 302(a)(2) provides for personal jurisdiction over a defendant who "commits a tortious act [other than defamation of character] within the state" if the cause of action arises from that activity. N.Y. C.P.L.R. § 302(a)(2). "[F]or jurisdiction to attach under this subsection, a defendant's tortious act must have occurred while the defendant was physically present in New York . . . [or] [a]lternatively, a defendant's agent could be physically present in New York." *Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 299 (S.D.N.Y. 2020); *see Creative Photographers*, 2024 WL 1533189, at *9. To establish an agency relationship for jurisdictional purposes, a plaintiff must show 'that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981); *accord Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 68 (2d Cir. 2017) (summary order). "It is not enough to allege that defendants had the legal ability to control the alleged agent; plaintiffs seeking to establish jurisdiction under C.P.L.R. § 302(a)(2) must allege the actual exercise of control, based on 'the realities of the relationship.'" *Hau Yin To*, 700 F. App'x at 68 (quoting *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986)).

Plaintiff argues that although Defendant is a Mexican corporation without any presence in New York, jurisdiction lies pursuant to Section 302(a)(2) on the basis of its agency relationships with TU and the Univision Entities. Dkt. No. 57 at 12–13. However, Plaintiff fails to show that Defendant had an agency relationship with any of those entities.

---

as true. *See Dorchester*, 722 F.3d at 86; *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 124 (2d Cir. 2021).

Plaintiff's agency allegations primarily boil down to the conclusory statement that:

> [Defendant] has sufficient ownership interest in TU and the Univision Entities and thus the ability to exercise some control over TU and the Univision Entities and has the ability to benefit from the revenues and profits of TU and the Univision Entities[] [s]uch that the Univision Entities or at least Univision Communications, Inc. and TU operate as agents of [Defendant] when employees or officers of TU and the Univision Entities reproduce, distribute, or publicly display any of the copyrighted works at issue in this litigation at on computers systems, servers, or devices in New York.

Dkt. No. 46 ¶ 65; *see also id.* ¶¶ 41–43.[11]   The SAC does not allege that Defendant had any knowledge of TU or the Univision Entities' actions.   Plaintiff's only purportedly supporting allegations are: (1) Defendant is the largest shareholder of TU and that in turn TU "is the controlling company of Univision Communications," Dkt. No. 46 ¶¶ 30, 32–33, and (2) Defendant, TU, and the Univision Entities share some common management, *id.* ¶ 66.  Neither suffices to establish an agency relationship that could give rise to jurisdiction pursuant to Section 302(a)(2).

Plaintiff does not explain why Defendant's status as TU's largest shareholder—and not necessarily even its majority shareholder—would convey sufficient control over TU or the Univision Entities including control over what media is made available online.  Another court within this district, when faced with a similar lawsuit against Grupo Televisa, S.A.B., rejected the plaintiff's similar allegations as insufficient to support a prima facie case of personal jurisdiction. *See Minden Pictures*, 738 F. Supp. 3d at 468 (holding that plaintiff failed to "adequately allege that GrupoTelevisa exercised the requisite level of control over Univision or TelevisaUnivision with respect to the alleged infringement at issue here" where "the amended complaint alleges only that defendant was the 'largest shareholder' of TelevisaUnivision and that its ownership of 'equity

---

[11] This statement is directly contradicted by Vela's declared statements that  Defendant does not control TU or a New York based company known as "Univision."  Dkt. No. 23 ¶¶ 10–11.

in Univision Holdings, Inc.' gave defendant the 'ability to control and benefit from the actions of Univision Communications, Inc., including the distribution of Spanish language content to consumers in the United States, including consumers residing in New York'").

Defendant also points out that Plaintiff's allegations of common management are illusory. Dkt. No. 58 at 5.  The SAC states that certain officers and directors served in leadership roles in multiple of the entities.  Dkt. No. 46 ¶ 66.  However, it does not state that any of the officers *concurrently* held the positions in more than one entity.  *Id.*  Instead, Defendants state, those individuals held the positions *consecutively*.  *See* Dkt. No. 58 at 5.  When an individual works at one company, and subsequently works at another, there is no reason to believe that either company controls the other.  Similarly, Plaintiff's allegation that employees at TU and the Univision Entities work together at the same office, Dkt. No. 46 ¶ 67, provides no basis to infer that Defendant controlled the actions of TU or the Univision Entities.

Plaintiff's sparse allegations regarding agency are too conclusory to make a *prima facie* showing of personal jurisdiction.  *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 86 (2d Cir. 2018); *Pincione v. D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012) (summary order); *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015). Accordingly, Plaintiff has not established personal jurisdiction under N.Y. C.P.L.R. § 302(a)(2).

E.    **Section 302(a)(3)**

Section 302(a)(3) "provides that a New York court will have personal jurisdiction over an out-of-state defendant who 'commits a tortious act without the state causing injury to person or property within the state' under one of two circumstances: 'if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or

international commerce; or owns, uses or possesses any real property situated within the state.'" *Creative Photographers*, 2024 WL 1533189, at *10 (quoting N.Y. C.P.L.R. § 302(a)(3)).  To establish jurisdiction under C.P.L.R. § 302(a)(3)(ii), a plaintiff must allege that "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159, 162 (N.Y. 2011).

In its prior opinion on the motion to dismiss the FAC, the Court noted that for the third prong of the test—the requirement that the tortious act caused an injury to a person or property in New York—"residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction under section 302(a)(3)."  *Creative Photographers*, 2024 WL 1533189, at *11 (quoting *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (punctuation omitted)).  Instead, where an in-state plaintiff accuses an out-of-state defendant of internet-based copyright infringement, it is incumbent upon the plaintiff "to allege facts demonstrating a non-speculative and direct New York-based injury to its intellectual property rights."  *Troma Ent.*, 729 F.3d at 220.

In *Troma Entertainment, Inc. v. Centennial Pictures Inc.*, the Second Circuit held that the plaintiff's allegations that the defendant usurped two potential licensing agreements in Germany and thereby caused "generalized harm (i.e., statutory damages as a result of [defendants'] willful infringement) to its exclusive distribution right," were "far too speculative to support a finding that [plaintiff] suffered injury in New York within the meaning of section 302(a)(3)."  *Id.* Subsequently, courts in this Circuit have applied *Troma* to find that allegations that a defendant

uploaded a New York resident's copyrighted works to the internet without paying a licensing fee would not suffice to establish an in-state injury.  *See Creative Photographers*, 2024 WL 1533189, at *11–12 (analyzing *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, 2017 WL 449913, at *6 (S.D.N.Y. Jan. 18, 2017); *Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*, 2018 WL 3639929, at *11 (S.D.N.Y. July 10, 2018), *report and recommendation adopted*, 2018 WL 3632524 (S.D.N.Y. July 31, 2018); *Freeplay Music, LLC v. Rigol Techs. USA, Inc.*, 2020 WL 564232, at *7 (S.D.N.Y. Feb. 4, 2020)).  Where the "crux" of the claim is that "as a result of the infringement, plaintiff had lost the defendant as a potential customer, 'as well the licensing revenue that [the defendant] would otherwise have been required to pay to use the copyrighted material'" those injuries do not satisfy the third prong of section 302(a)(3).  *Dave Arbogast*, 2017 WL 449913, at *5–7; *see also Nian*, 2018 WL 3639929, at *11 (plaintiff failed to allege personal jurisdiction pursuant to section 302(a)(3) where it "alleges only that it was deprived of license fees from [defendant]"); *Rigol*, 2020 WL 564232, at *7 (plaintiff failed to allege personal jurisdiction pursuant to section 302(a)(3) where, "[e]ven in its briefing, [plaintiff] admits that purchasing a retroactive license and paying past fees 'would have resolved this matter.'").

The Court previously held that the FAC was "nearly indistinguishable from *Arbogast*, *Nian*, and *Rigol*" because the alleged injury was limited to Plaintiff's lost licensing revenue from Defendant.  *Creative Photographers*, 2024 WL 1533189, at *12.  The Court noted that:

> As relief, Plaintiff seeks, among other things, an accounting of [Defendant's] revenue, an award of [Defendant's] gains and profits, or, in the alternative statutory damages, as well as exemplary and punitive damages.[12]  Plaintiff does not allege any other damages.  Plaintiff also does not allege that Defendant posted the Copyrighted Works with the purpose of making them available for visitors of its

---

[12] Although the Court's prior opinion stated that Plaintiff sought an accounting of Plaintiff's revenue and an award of Plaintiff's gains and profits, that was a typographical error.  *See* Dkt. No. 12 at 9–10 (seeking an accounting of Defendant's revenue and an award of Defendant's gains and profits).

websites to download, or that any of the visitors to the websites can actually download images of the Copyrighted Works from its websites or otherwise use the images to generate content of their own.  Nor does Plaintiff allege that it suffers an incremental injury or harm when the images are viewed by visitors to those websites.

*Id.* (citation omitted).  Therefore, because Plaintiff's harm could be circumscribed to a particular locality—the place where Defendant, the lost customer, was located—the  Court found that the FAC failed to establish a prima facie case of personal jurisdiction pursuant to Section 302(a)(3). *Id.*

The SAC primarily retreads those same allegations of injury.  Plaintiff alleges that Defendant "is a sophisticated media company familiar with copyright law and the need to seek a license for the use of Plaintiff's Copyrighted Works or some of Plaintiff's Copyrighted Works, knew it did not have permission to use Plaintiff's Copyrighted Works or some of Plaintiff's Copyrighted Works and deliberately did so anyway."  Dkt. No. 46 ¶ 97.  Plaintiff does not allege that Defendant made the Copyrighted Works available to download or otherwise use.  As relief, Plaintiff again seeks, among other things, an accounting of Defendant's revenue, an award of Defendant's gains and profits, or, in the alternative statutory damages, as well as exemplary and punitive damages.  *Id.* at 31–32.  For the same reasons stated previously, those injuries are insufficient for the purposes of Section 302(a)(3).  *See Creative Photographers*, 2024 WL 1533189, at *10–12.

Plaintiff argues that the SAC does go beyond the FAC by detailing the harm caused to Plaintiff by the appearance of the Copyrighted Works on Defendant's click-bait websites.  Dkt. No. 57 at 15.  The SAC states that Defendant "has seriously harmed [the Copyrighted Works'] exclusivity by circulating its infringing copies on the Internet in low budget click bait journalism" and "*Vogue* or *Elle* are not going to use a work of Plaintiff's that has appeared as viral, click-bait material all over the Internet, because it is no longer exclusive."  Dkt. No. 46 ¶ 74.  This allegation

comes much closer to identifying an in-state injury in the form of the loss of New York customers. *See Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008) (noting that although "lost sales or customers can satisfy the 'injury within New York' requirement under Section 302(a)(3)(ii), those lost sales must be in the New York market, and those lost customers must be New York customers"); *accord Ballon Stoll P.C. v. Cutler*, 2024 WL 1256049, at *9 (S.D.N.Y. Mar. 25, 2024). However, while Plaintiff alleges that the reproduction generally lessens the desirability of the Copyrighted Works, Plaintiff does not allege that it has actually lost any opportunities to license the photographs. And even if the SAC did allege that *Elle* or *Vogue* would have licensed any of the Copyrighted Works but for Defendant's reproduction, Plaintiff does not allege that either magazine is a New York customer. Although Plaintiff states that the magazines both "operat[e] here in New York," Dkt. No. 46 ¶ 74, that is true of any publication with nationwide syndication and does not locate the lost business as occurring specifically within the New York market. *See Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015); *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 356 (S.D.N.Y. 2014).

Because Plaintiff does not identify a New York injury, Plaintiff has not established personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3).

## II.    Rule 4(k)(2)

Federal Rule of Civil Procedure 4(k)(2) is commonly known as the federal long-arm statute and operates to ensure that plaintiffs may bring suits in the United States against defendants with sufficient contacts with the United States to justify the application of United States law, but insufficient contact with any single state to support jurisdiction under state long-arm legislation. *See Creative Photographers*, 2024 WL 1533189, at *13 (citing *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 760 (S.D.N.Y. 2004)). The rule "allows the exercise of personal jurisdiction by a federal district court when three requirements are met: (1) the claim must arise under federal

law; (2) the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction must be consistent with the United States Constitution and laws." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008); Fed. R. Civ. P. 4(k)(2).  Defendant does not contest that the SAC satisfies the first two requirements, arguing only that the exercise of jurisdiction over Defendant "would be inconsistent with the U.S. Constitution and laws, especially due process." Dkt. No. 54 at 17–20; Dkt. No. 58 at 10–11.

"The due process analysis for Rule 4(k)(2) jurisdiction hinges on whether the non-resident has sufficient minimum contacts with the United States as a whole instead of with the specific forum state." *George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co Ltd*, 2021 WL 168930, at *11 (S.D.N.Y. Jan. 18, 2021).  "A plaintiff may seek to establish contacts supporting either specific or general jurisdiction under Rule 4(k)(2)." *Id.* (citing *Porina*, 521 F.3d at 127); *accord In re Angeln GmBH & Co. KG*, 510 F. App'x 90, 92 (2d Cir. 2013) (summary order).  "When a plaintiff invokes Rule 4(k)(2) on a theory of general jurisdiction, it must satisfy a more stringent minimum contacts test." *Del Monte Fresh Produce N.A., Inc. v. M/V AFRICA REEFER*, 2013 WL 1129998, at *5 (S.D.N.Y. Mar. 19, 2013) (citation and alterations omitted).  "This standard requires plaintiff to prove that defendant's contacts approximate physical presence in the United States." *Id.* (quoting *BBC Chartering & Logistic GmbH & Co. KG v. Usiminas Mecanica S/A*, 2009 WL 259618, at *5 (S.D.N.Y. Feb. 4, 2009)); *accord Angeln GmBH*, 510 F. App'x at 92; *cf. Lensky v. Turk Hava Yollari, A.O.*, 2023 WL 6173334, at *3 (2d Cir. Sept. 22, 2023) (summary order) (noting that "it is an open question whether general jurisdiction under Rule 4(k)(2)(B) must be determined pursuant to the 'essentially at home' inquiry or the 'continuous and systematic' inquiry").

Plaintiff argues that the SAC alleges "that Defendant has significant contacts here in the United States," Dkt. No. 57 at 16, in the form of (1) contracts between Defendant and TU or the Univision Entities, (2) contracts between Defendant and other American companies, and (3) Defendant's participation in lawsuits in various federal courts, Dkt. No. 46 ¶¶ 18–30.[13]  The Court discusses each category of Defendant's alleged American contacts in turn.

Plaintiff's conclusory allegations concerning Defendant's contracts with TU and the Univision Entities fail to support specific or general jurisdiction in the United States for the same reasons that they fail to support specific jurisdiction in New York.  *See supra*.  The allegations concerning the transactions are conclusory and do not state whether Plaintiff transacted with American entities or merely their affiliates, while the allegations concerning the websites do not show that they were interactive sites that targeted American visitors.

The SAC alleges the existence of some unspecified number of contracts between Defendant and two American companies dating back to before 2021: Sony Pictures Studios in California and the New York-based company known as Viacom and later ViacomCBS.  Dkt. No. 46 ¶¶ 23–24.  However, merely entering into some number of contracts with a domestic company does not make a foreign country "at home" in the forum nor indicate "continuous and systematic" contact.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416

---

[13] Plaintiff does not appear to argue that its allegations concerning Defendant's New York bank accounts or the fact that Defendant's stock trades on the New York Stock Exchange give rise to jurisdiction in the United States.  Dkt. No. 57 at 16.  For the sake of completeness, the Court notes that such allegations would be insufficient regardless.  *See Cordice v. LIAT Airlines*, 2015 WL 5579868, at *6 (E.D.N.Y. Sept. 22, 2015) (holding that defendant's alleged maintenance of bank accounts in the United States is insufficient to give rise to personal jurisdiction under Rule 4(k)(2)); *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) ("[T]he Court is not persuaded that Congress intended for the courts to assert jurisdiction under Rule 4(k)(2) whenever a corporation lists its stock on a United States exchange."); *see also Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 573 (2d Cir. 2020) (summary order) (holding that trading on a New York-based stock exchange does not subject defendant to general personal jurisdiction).

(1984); *Oceanic Expl. Co. v. ConocoPhillips, Inc.*, 2006 WL 2711527, at *14 (D.D.C. Sept. 21, 2006). Plaintiff alleges nothing about the size, subject matter[14], or frequency of Defendants' contracts in general or in contrast to Defendant's foreign business. *See George Moundreas*, 2021 WL 168930, at *12. These allegations cannot support specific personal jurisdiction because Plaintiff does not argue that its copyright infringement claims arise from any of Defendant's contracts with Sony Pictures Studios, Viacom, or ViacomCBS. *See Metro. Life*, 84 F.3d at 568; *Conrad v. Latido Mitu Holdings, LLC*, 2021 WL 5909656, at *4 (S.D.N.Y. Dec. 10, 2021).

The SAC also alleges that Defendant "has been a party in a number of federal court cases throughout the United States." Dkt. No. 46 ¶¶ 25–27, 35–36. Participation in separate litigation in the forum does not provide the Court with general jurisdiction over Defendant, particularly given that Plaintiff does not allege that any other court found Defendant was susceptible to general jurisdiction. *See Goodman v. Bouzy*, 2022 WL 16847284, at *4 n.8 (S.D.N.Y. Nov. 10, 2022), *report and recommendation adopted*, 2022 WL 17624872 (S.D.N.Y. Dec. 13, 2022); *Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 787 (S.D.N.Y. 2015); *see also Ahmad v. Day*, at *6 (S.D.N.Y. June 2, 2022) ("[V]oluntarily participating in a single lawsuit does not establish sufficient activity in a state to warrant exercising general jurisdiction, unless the prior and current lawsuits are substantially related." (citation omitted)), *report and recommendation adopted*, 2022 WL 2452231 (S.D.N.Y. July 6, 2022). These allegations also cannot support specific personal jurisdiction because Plaintiff does not argue that its copyright infringement claims arise from any

---

[14] Defendant states in its memorandum of law in support of the motion to dismiss that the contracts were "to distribute those companies' content, presumably, to consumers in Mexico," Dkt. No. 54 at 19 (emphasis omitted), but does not submit a sworn declaration stating the same. The Court accordingly disregards that factual representation.

of the prior litigations.  *See Metro. Life*, 84 F.3d at 568; *Yehuda v. Zuchaer*, 2023 WL 8888584, at *3 (2d Cir. Dec. 26, 2023) (summary order).

Because Defendants' alleged contacts with the United States "do not satisfy the heightened minimum contacts requirement for general [or specific] jurisdiction over a non-resident," the Court "need not consider whether personal jurisdiction would be 'reasonable' in the particular circumstances of the case."  *Porina*, 521 F.3d at 129; *see Metro. Life*, 84 F.3d at 568 ("[I]f the constitutionally necessary first-tier minimum is lacking, the inquiry ends.").

## CONCLUSION

The motion to dismiss the SAC for lack of personal jurisdiction is GRANTED.  Because Plaintiff has had multiple opportunities to amend, and any further amendment would be futile, the SAC is dismissed with prejudice.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend.  A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal citations and punctuation omitted)).

The Clerk of Court is respectfully directed to terminate any pending motions and close the case.

SO ORDERED.

Dated: February 4, 2025
        New York, New York                    _____
                                                      LEWIS J. LIMAN
                                               United States District Judge